# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# AT LOUISVILLE

**ABDUL HAKEEM MALICK**                                                                              **PLAINTIFF**

**v.**                                                          **CIVIL ACTION NO. 3:06CV-P-156-H**

**DR. TOM CAMPBELL** *et al.*                                                              **DEFENDANTS**

## MEMORANDUM OPINION

Plaintiff filed this civil rights action under 42 U.S.C. § 1983.  It is currently before the Court on Defendants' motion for summary judgment.  As explained below, the Court will enter judgment in favor of Defendants because Plaintiff failed to properly exhaust all available administrative remedies prior to filing suit.  Additionally, this action is subject to dismissal because Plaintiff sued Defendants in their official capacities only, but failed to allege that Defendants violated any official policy or custom.

## I.

Summary judgment is proper "if the pleadings, the discovery material and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed  R. Civ. P. 56(c).  The party moving for summary judgment bears the burden of demonstrating the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing  the motion.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005). The moving party's burden may be discharged by demonstrating that there is an absence of evidence to support an essential element of the non-moving party's case for which he or she has the burden of proof.  *Celotex*, 477 U.S. at 323.  Once the moving party demonstrates this lack of

evidence, the burden passes to the non-moving party to establish, after an adequate opportunity for discovery, the existence of a disputed factual element essential to his case with respect to which he bears the burden of proof. *Id.* If the non-moving party will bear the burden at trial on a dispositive issue, the non-moving party must go beyond the pleadings and by his own affidavits, "or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (internal quotation marks omitted, citing Fed. R. Civ. P. 56(e)). If the record taken as a whole could not lead the trier of fact to find for the non-moving party, the motion for summary judgment should be granted. *Matsushita Elec. Indus. Co.*, 475 U.S. at 587.

Where the non-moving party bears the burden of proof at trial, "a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. The moving party, therefore, is "entitled to a judgment as a matter of law because the non-moving party has failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof." *Id.* (internal quotation marks omitted). One of the principal purposes of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *Id.* at 323-24.

Prisoner civil rights cases are subject to the PLRA's mandate that "[n]o action shall be brought with respect to prison conditions under § 1983 . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). To exhaust a claim, a prisoner must proceed through all of the steps of a prison's or jail's grievance process, because an inmate "cannot abandon the process before completion and claim that he has exhausted  his remedies." *Hartsfield v. Vidor*, 199 F.3d 305, 309 (6th Cir. 1999). The Supreme Court held in *Woodford v. Ngo*, 548 U.S. 81 , 126 S. Ct.

2

2378, 2387, 165 L. Ed. 2d 368 (2006), that failure to "properly" exhaust bars suit in federal court. "Proper exhaustion" means that the plaintiff complied with the administrative "agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* at 2386.

The Supreme Court recently provided further clarification of the PLRA's exhaustion rule in *Jones v. Bock*, --U.S.--, 127 S. Ct. 910, 166 L. Ed. 2d 798 (2007). The Court struck down the Sixth Circuit's rule which placed the burden on prisoners to plead and prove exhaustion in their complaint, holding instead that failure to exhaust is an affirmative defense. *Id.* at 921. The Court further held that "[t]he level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Id*. at 923.

## II.

Plaintiff, Abdul Hakeen Malik, was incarcerated as a pretrial detainee in Louisville-Jefferson County Metro Corrections ("Metro Corrections") during the relevant time period. He sued Metro Corrections Director Tom Campbell and Deputy Director Kevin Sidebottom in their official capacities claiming injuries arising out of: 1) exposure to raw sewage from a leaking toilet; and 2) Defendants' failure to provide Plaintiff with certain rehabilitation therapy for a leg injury that Judge Martin McDonald[1] ordered as part of Plaintiff's criminal case. The central issue on summary judgment is whether Plaintiff properly exhausted these claims before he filed suit.

Metro Corrections has a multi-step grievance mechanism available to all inmates which is set forth in Policy No. 11.14. The inmate must first attempt to resolve his grievance through an

---

[1]Judge McDonald is a Jefferson County Circuit Court judge.

informal resolution with the assistance of a staff member.  If the inmate is dissatisfied with the proposed resolution at this stage, he may submit a formal grievance to a staff member or forward the grievance to the Shift Commander for review.  If the Shift Commander cannot resolve the issue to the inmate's satisfaction, the inmate may file an appeal to the appropriate Divisional Director.  If the inmate is not satisfied with the decision by the Divisional Director, he may file an appeal with the Lt. Colonel of the Jefferson County Corrections Department.  The Lt. Colonel may act on the appeal or forward the matter to an investigator for further review.  Finally, if the grievance is not resolved at this stage, the inmate may appeal the decision to the Chief/Director of the Department of Corrections.  Once the inmate has taken the grievance through these channels, he has exhausted his administrative remedies.  If during the course of the process, the appropriate official fails to respond to his grievance, the inmate may move on to the next step in the review process.[2]  Additionally, while the grievance procedure imposes time limits at each stage of the process, those time limits may be extended.

　　　　With regard to Plaintiff's grievances concerning therapy for his leg, it is undisputed that Plaintiff did file written grievances seeking physical therapy.  However, it is likewise undisputed that Plaintiff did not complete the grievance process with respect to this claim.  Metro Corrections grievance coordinator, Sandy Northington, states in her affidavit that "the grievances concerning [Plaintiff's] medical care and physical therapy stopped at the first level of review."  Plaintiff has failed to rebut Ms. Northington's assertions.  Instead, he states that he was placed in segregation for filing grievances related to his leg.  Plaintiff argues that this should excuse his failure to complete the grievance process.  Defendants counter that Plaintiff was placed in segregation

---

[2]The grievance procedure provides that "[a]bsent an extension, expiration of response time limits entitles the inmate to move on to the next step in the review process."

because he had to use a cane, and therefore, was not suitable for placement in the general population."  Regardless of the reasons Plaintiff was placed in segregation, it is clear that the grievance process was still available to and used by him during his time in segregation.  The record reveals that Plaintiff filed grievances while in administrative segregation.  Specifically, in a grievance dated August 5, 2005, Plaintiff asked to be released from the hole and placed back into the general population because he no longer needed his cane.  Prison officials responded to this grievance stating "refusal to use cane was signed by Mr Malik and per medical he is released to G.P."  Additionally, it is clear that Plaintiff understood how to file a grievance, which belies his assertion that the process was not adequately explained to him.

Plaintiff also appears to argue that Defendants' failure to respond to his initial grievances excused his failure to complete the grievance process.  However, the Sixth Circuit has affirmatively held that should the authorities to whom the inmate has presented his grievance ignore his written plaint, he must proceed to the next level in the grievance process.  *Hartsfield,* 199 F.3d at 309 ("Even if plaintiff did file an initial grievance . . . he was required to continue to the next step in the grievance process within the time frame set forth in the regulations if no response is received from prison officials or if the prisoner is not satisfied with the response.").[3] Indeed, even if an appeal is time-barred by the prison's administrative procedures, the inmate must still pursue the remedy for without doing so he does not give the state the opportunity to remedy

---

[3]The Court is well aware of the Sixth Circuit's holding in *Boyd v. Corr. Corp. of Am.*, 380 F.3d 989 (6th Cir. 2004), that "administrative remedies are exhausted when prison officials fail to timely respond to a properly filed grievance." *Id.* at 996.  The grievance process in *Boyd*, however, did not allow the prisoner to proceed if he received no answer. *Id.* ("Boyd, in contrast, was required to wait for a grievance officer to make a decision regarding his formal grievance before he could appeal to the warden.").  Thus, no further procedure was available to Boyd.  Such is not the case here, where there is a specific provision that allows an inmate to move forward despite inaction by a corrections official.

the alleged wrong.  *Id.*

Plaintiff's claims that he verbally complained to officials and that his criminal lawyers wrote letters and called prison officials to seek treatment also fail to excuse his compliance with the grievance procedures.  A prisoner may not raise his claims in informal complaints as he must follow the formal grievance process to properly exhaust all administrative remedies.  *Freeman v. Francis*, 196 F.3d 641 (6th Cir. 1999).

With respect to his claim about the leaking toilet, Plaintiff has failed to rebut the sworn statement of Sandy Northington that Plaintiff never filed a grievance concerning this matter. Instead, Plaintiff alleges that grieving the issue would have been futile because other inmates had filed grievances concerning that issue (and others) that were ignored by prison officials.  However, a prisoner may not simply fail to file a grievance or abandon the process before completion and claim that he has exhausted his remedies or that it is futile for him to do so.  *Wright v. Morris*, 111 F.3d 414, 417 n.3 (6th Cir. 1997).  Additionally, the grievance procedure does not allow "group grievances."  Accordingly, Plaintiff cannot rely on the fact that other inmates at various other times may have filed grievances concerning the leaking toilet.  The determinative fact is that despite being given ample opportunity to do so, Plaintiff has failed to establish that he properly grieved this claim.

For the reasons explained above, the Court finds that Defendants are entitled to summary judgment because it is undisputed that Plaintiff did not properly grieve his claims concerning medical treatment for his leg or the leaking toilet in his prison dormitory.

## III.

Even if Plaintiff had properly grieved these claims, they would nevertheless be subject to dismissal under 28 U.S.C. § 1915(e)(2)(B)(ii) ("[T]he court shall dismiss the case at any time if the

court determines that . . . the action or appeal fails to state a claim on which relief may be granted"). Plaintiff sued Defendants in their official capacities only. If an action is brought against an official of a governmental entity in his official capacity, the suit should be construed as brought against the governmental entity. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Therefore, in the case at bar, Plaintiff's claims against Defendants are actually brought against the Louisville Metro government. *See Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994).

"[A] municipality cannot be held liable solely because it employs a tortfeasor -- or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994); *Berry v. City of Detroit*, 25 F.3d 1342, 1345 (6th Cir. 1994). "[T]he touchstone of 'official policy' is designed 'to distinguish acts of the municipality from acts of employees of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible.'" *City of St. Louis v. Praprotnik*, 485 U.S. 112, 138 (1988) (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479-80 (emphasis in *Pembaur*)).

A municipality cannot be held responsible for a constitutional deprivation unless there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation. *Monell*, 436 U.S. at 691; *Deaton v. Montgomery County, Ohio*, 989 F.2d 885, 889 (6th Cir. 1993). Simply stated, the plaintiff must "identify the policy, connect the policy to the city itself and show that the particular injury was incurred because of the execution of that policy." *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993) (quoting *Coogan v. City of Wixom*, 820 F.2d 170, 176 (6th Cir. 1987), *overruled on other grounds, Frantz v. Village of Bradford*, 245 F.3d 869 (6th Cir. 2001)). The policy or custom "must be 'the moving force of the constitutional

violation' in order to establish the liability of a government body under § 1983." *Searcy*, 38 F.3d at 286 (quoting *Polk County v. Dodson*, 454 U.S. 312, 326 (1981) (citation omitted)); *Bd. of County Comm'rs of Bryan County, Okla. v. Brown*, 520 U.S. 397, 404 (1997) (indicating that plaintiff must demonstrate "deliberate conduct").

In the instant case, Plaintiff has not alleged the existence of a governmental policy or custom relative to the nature of his complaints and claims relating to therapy for his leg or the leaking toilet.  Because Plaintiff does not allege the existence of a direct causal link between a municipal policy or custom and the alleged constitutional violations, *see Monell*, 436 U.S. at 691, he has failed to state a claim for which relief may be granted against the Louisville Metro government.  Therefore, irrespective of the exhaustion issue, all of Plaintiff's claims against Defendants are destined to fail, and therefore subject to dismissal under 28 U.S.C. § 1915(e)(2)(B)(ii) .

Consistent with this Memorandum Opinion, the Court will enter summary judgment in Defendants' favor.

Date:

cc:     Plaintiff
        Counsel of record

4412.008